IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK W. LYNCH, | : | |
| | : | |
| Petitioner | : | CIVIL NO. 4:CV-03-2287 |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| Superintendent CHESNEY, | : | |
| | : | |
| Respondent | : | |

**<u>ORDER</u>**

November 21, 2005

**I. <u>Background</u>**

Petitioner, Mark W. Lynch ("Petitioner" or "Lynch"), an inmate presently incarcerated at the State Correctional Institution, in Chester, Pennsylvania filed the above-captioned Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. (Rec. Doc. 1). Petitioner has paid the required filing fee. In accordance with <u>United States v. Miller</u>, 197 F.3d 644 (3d Cir. 1999), and <u>Mason v. Meyers</u>, 208 F.3d 414 (3d Cir. 2000), an Order was issued advising the Petitioner that: (1) he could have the document ruled on as filed, that is, as a § 2254 Petition and heard as such, but lose his ability to file a second or successive petition absent certification by the court of appeals, or (2) withdraw his petition and file one, all inclusive § 2254 Petition within

the one-year statute of limitations period prescribed by 28 U.S.C. § 2244(d). (Rec. Doc. 3). Lynch responded by submitting a Notice of Election on January 22, 2004, in which he opted to have his Petition considered as filed. (Rec. Doc. 5). Thereafter, the Court issued an Order to show cause, directing Respondent to respond to the Petition. (Rec. Doc. 6). On March 25, 2004, Respondent filed an answer to the Petition, and supporting memorandum and exhibits. (Rec. Docs. 13-15). On May 21, 2004, Petitioner filed a document entitled "amendment" to the Petition, which the Court will construe as Petitioner's traverse. The Petition is presently ripe for disposition and, for the reasons that follow, will be denied.

## A. **Background**

On May 17, 1999, while highly intoxicated, Lynch drove north in the southbound lanes of Interstate 83 in Harrisburg, Pennsylvania, and collided head-on with James E. Dorothy. Dorothy did not survive the accident.

On May 20, 1999, Lynch was arrested by the Pennsylvania State Police and charged with Homicide by Vehicle While Driving Under the Influence, in violation of 75 Pa.C.S.A. § 3735(a), Homicide by Vehicle, in violation of 75 Pa.C.S.A. § 3732, Involuntary Manslaughter, in violation of 18 Pa.C.S.A. § 2504(a), Driving Under the Influence of Alcohol, in violation of 18 Pa.C.S.A. §§ 3731(a)(1), (4)(i) and several

summary offenses.[1]  On March 6, 2000, Lynch pled guilty to all charges.  (Rec. Doc. 15, Ex. A, Notes of Testimony of Guilty Plea).

On April 27, 2000, Lynch was sentenced to a term of imprisonment of five to ten years on the Homicide by Vehicle While DUI charge, a consecutive term of imprisonment of two to five years on the Involuntary Manslaughter charge, lifetime suspension of driving privileges, restitution in the amount of $19,180.41, court costs and standard fines on the summary offenses.  (Rec. Doc. 15, Ex. B, Notes of Testimony of Sentencing).  By Order of April 27, 2000, the trial court, *sua sponte*, vacated the sentence as an illegal sentence, holding that "the trial court is unable to impose consecutive sentences since the charge of involuntary manslaughter merges by law with homicide by vehicle while driving under the influence."  (Rec. Doc. 15, Ex. D, Order).  Thus, the Court vacated the consecutive sentence of two to five years, leaving a sentence of five to ten years.  Id.

---

[1] Specifically, he was charged with careless driving, 75 Pa.C.S.A. § 3714, reckless driving, 75 Pa.C.S.A. § 3736(a), one-way roadways and rotary traffic islands, driving on one-way roadway, 75 Pa.C.S.A. § 3308(b), driving on roadways laned for traffic, driving within single lane, 75 Pa.C.S.A. § 3309(1), and driving on divided highways, 75 Pa.C.S.A. § 3311(a).

On May 2, 2000, the Commonwealth filed a Petition for Reconsideration of the Sentence, pointing out that pursuant to Commonwealth v. Neupert, 684 A.2d 627 (Pa. Super. 1996), Homicide by Vehicle does not merge with Homicide by Vehicle While DUI for sentencing purposes. (Rec. Doc. 15, Ex. E, Motion for Reconsideration). On May 8, 2000, Lynch filed an Answer to the Commonwealth's Petition for Reconsideration of Sentence, averring, *inter alia*, that there was a negotiated plea agreement under which the sentence would be no less than the mandatory minimum and the Commonwealth would not object to any sentence imposed by the trial court. (Rec. Doc. 15, Ex. F, Answer).

On June 7, 2000, the trial court vacated its finding that the charges of Homicide by Vehicle and Homicide by Vehicle while DUI merge and reimposed the consecutive sentence of two to five years imprisonment. (Rec. Doc. 15, Ex. G, Order). Lynch did not file a direct appeal from the judgment of sentence.

On March 12, 2001, Lynch filed a pro se Motion to Enforce Plea Agreement. (Rec. Doc. 15, Ex. H). By Order dated March 15, 2001, the trial court construed the Motion to Enforce Plea Agreement as a petition for relief under the Pennsylvania's

Post Conviction Relief Act (PCRA),[2] appointed counsel to represent Lynch, and granted leave to file a supplemental PCRA petition. (Rec. Doc. 15, Ex. I). On June 12, 2001, Lynch, through appointed counsel, filed a Supplemental Petition under the PCRA, in which he claims trial counsel was ineffective and/or unlawfully induced petitioner to plead guilty for the following reasons:

> (1) Petitioner's pro se Motion to Enforce Plea Agreement demonstrates petitioner was acting under the assumption that he would plead guilty in exchange for a certain consideration from the Commonwealth. Specifically, Petitioner claims the Commonwealth, pursuant to a negotiated plea agreement, agreed not to recommend or object to any sentence which the Court may impose if said sentence did not fall below the mandatory minimum sentence of three (3) years of incarceration on the charge of Homicide by Vehicle While DUI.
>
> (2) Undersigned counsel has carefully reviewed the record of defendant's case, the written guilty plea colloquy signed by petitioner and the sentencing guidelines executed by Your Honorable Court and has failed to discover any mention of a plea agreement offered by the Commonwealth.  However, undersigned counsel notes that Attorney Krevsky's final averment in his Answer to Commonwealth Petition for Reconsideration of Sentence makes specific mention of the existence of a negotiated plea agreement which he alleges was violated by the Commonwealth.
>
> (3) Assuming, *arguendo*, a negotiated plea agreement *did not exist*, it would certainly appear Attorney Krevsky had indicated to petitioner that an agreement did exist.

---

2.  See 42 Pa. Cons. Stat. Ann. § 9541 et seq.

> (4) Assuming, *arguendo*, a plea agreement *did exist*, it would appear that Commonwealth violated same when, at sentencing, Mrs. Dorothy and Mr. Dorothy (unidentified speaker) testified at defendant's sentencing "I would really appreciate if the Court would keep this man in jail for a considerable amount of time" and "The maximum sentence is what I would ask the Court to put forth in this individual". [Notes from Transcript of Sentencing, p. 5-6, lis. 19-20 and lis. 11-13].
>
> (5) Assuming, *arguendo*, a plea agreement *did exist*, it was violated when the District Attorney's final averment in its petition for reconsideration of sentence calling for a harsher sentence than five (5) to ten (10) years certainly recommends a sentence above and beyond the three year mandatory minimum.

Rec. Doc. 15, Ex. J, Supplemental Petition.

On November 2, 2001, the trial court, sitting as the PCRA Court, conducted an evidentiary hearing on Lynch's PCRA petition. (Rec. Doc. 15, Ex. C, Notes of Testimony of PCRA Hearing). At the end of the hearing, the Court denied the petition. Id. On December 13, 2001, Lynch filed a Motion to Reduce Judgment to Order or Final Decree. (Rec. Doc. 15, Ex. K). On December 20, 2001, the PCRA court issued a written Order denying the PCRA petition. (Rec. Doc. 15, Ex. L). A written Opinion relating to the denial of the PCRA petition was issued on February 20, 2002. (Rec. Doc. 15, Ex. M). In addressing the claims raised by Petitioner, the PCRA Court found as follows:

We find first hand that before the defendant pled guilty on March 6, 2000, there was never any plea agreement in existence between the defendant and the Commonwealth. In support of this conclusion, we have to look no further than the record of testimony at the defendant's PCRA hearing. The former prosecutor in this case first testified that no agreement existed. (Notes from various hearings hereinafter referred to as "PCRA" 12, "Guilty Plea", or "Sentencing"). He testified that it was customary of the District Attorney's Office, which remains unchanged, that when plea agreements are contemplated, the agreement must be signed and approved by the District Attorney. (PCRA 12). Thereafter, the court is notified of the agreement and the presiding judge either approves or disapproves. (PCRA 12). Here, the former prosecutor testified there was no written or oral plea agreement. (PCRA 19). In addition, no plea agreement was ever communicated to this Court for approval.

The defendant's trial counsel testified to the absence of a plea agreement. Trial counsel admits engaging in conversations with the Commonwealth, and that the latter would not recommend a sentence, nor object to any sentence this Court imposed provided that the Court issue the mandatory minimum sentence on the Homicide by Vehicle while DUI offense. (PCRA 27). However, we are not persuaded that these conversations amounted to a formal plea agreement. If an agreement was reached, it was never reduced to writing. Furthermore, if an agreement had been reached, it was never communicated to the Court as required by law.[3] After reviewing the testimony presented and the record as a whole, we find that no plea agreement ever existed between the defendant and the Commonwealth.

Consequently, we do not accept as true that trial counsel relied on an illusory plea agreement. We reach this conclusion because the record

---

[3] "When counsel for both sides have arrived at a plea agreement, they shall state on the record in open court, in the presence of the defendant, the terms of the agreement..." Pa.R.Crim.P. 590(B)(1).

-7-

> does not indicate, from either testimony of the former prosecutor or trial counsel that the former negotiated a plea in return for not recommending more than the minimum sentence. The Commonwealth was merely aware that the defendant was going to plead before the Court and that the Commonwealth had planned to recommend at least a minimum three year sentence be imposed. (PCRA 19). In the Court's opinion, this certainly does not indicate an illusory promise by the Commonwealth. We cannot discern any evidence that trial counsel ever relied on any illusory promises made by the District Attorney. It is this Court's impression at no time did trial counsel ever state to the defendant that he would only receive the mandatory minimum sentence based on illusory statements from the District Attorney. This court initially entered its intended aggregate sentence of seven (7) to fifteen (15) years. We then corrected that which was entered illegally due to the merger doctrine. The Commonwealth, in its motion to modify, did not object to the Court's sentence, they merely advised as to the means by which the Court could impose its initially intended sentencing scheme. The record at sentencing bears out the Court's inquiry to both counsel on the issues of merger, to which neither counsel could accurately advise the Court at that time. Consequently, we cannot find that the Commonwealth breached their position.

Commonwealth v. Lynch, No. 2237 A CD 1999 (February 20, 2002); Rec. Doc. 15, Ex. M.

In concluding that no agreement existed, the Court then determined whether counsel made unwarranted representations to Petitioner, thereby inducing him into pleading guilty:

> Having determined there was never any specific plea agreement at the time in the case, and that trial counsel never relied on an illusory promise by the Commonwealth, we turn to the defendant's claim that his trial

-8-

> counsel induced him into pleading guilty with the assurance that he would receive only three to six years of incarceration. We analyze this claim while accepting the Commonwealth's assertion that, under the PCRA, "A plead of guilty is unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent." 42 Pa. C.S.A. § 9543(a)(2)(iii).
>
> The defendant admitted that he never intended to conceal his guilt in any way. (PCRA 34). The defendant stated he expected only to serve a sentence of three to six years. (PCRA 33 & 34). However, at his guilty plea, he admitted reviewing the written Guilty Plea Colloquy with trial counsel, which leads the Court to believe his plea was knowing and voluntary. (Guilty Plea 5). Likewise, he admitted knowledge that the charge of Homicide by Vehicle while DUI carried a minimum sentence of three years, but that the Court was free to impose a higher minimum sentence. (Guilty Plea 6). Finally, the defendant never made a claim that he was innocent.
>
> The defendant also averred that trial counsel represented to him that counsel had somewhat of a relationship with the Court, which apparently would result in defendant receiving a lesser sentence than the one we imposed. We find this claim patently void of merit. We find, at no time, did trial counsel make unwarranted representations to the defendant that he would receive a certain sentence based on a relationship with the Court or with the Commonwealth. As a result, we find that trial counsel did not unlawfully induce the defendant into accepting an agreement specifying that he would receive three to six years incarceration.

Id.

On January 11, 2002, Lynch filed a notice of appeal to the Pennsylvania Superior Court. He raised the following grounds for relief:

    1.    Whether guilty plea counsel unlawfully induced petitioner to plead guilty relying on an illusory plea agreement where

>  the Commonwealth's attorney would have no objection to the sentence the lower court imposed so long as the mandatory minimum provisions of 75 Pa.C.S.A. § 3735 were applied?
>
> 2. Assuming, *arguendo*, no plea agreement existed, whether guilty plea counsel unlawfully induced petitioner to plead guilty where no plea agreement existed despite representing to petitioner an agreement did, in fact, exist?
>
> 3. Whether, assuming, *arguendo*, a plea agreement did exist that the Commonwealth's attorney would have no objection to any sentence imposed by the lower court so long as the mandatory minimum provisions of 75 Pa.C.S.A. § 3735 were imposed, the Commonwealth's attorney violated same by allowing the victim's family to testify at petitioner's sentencing and request "I would really appreciate if the court would keep this man in jail for a considerable amount of time" and "the maximum sentence is what I would ask the court to put forth on this individual"?

Rec. Doc. 15, Ex. N, Brief for Appellant on appeal to the Pennsylvania Superior Court.

On March 19, 2003, the Pennsylvania Superior Court affirmed the trial court's denial of Lynch's PCRA petition. Commonwealth v. Lynch, 820 A.2d 728 (Pa. Super.), alloc. denied, 835 A.2d 709 (Pa. 2003)(table); Rec. Doc. 15, Ex. Q, Opinion of Pennsylvania Superior Court. The Superior Court found that the record adequately supported the PCRA Court's findings, that there was no plea agreement, and that

Petitioner's counsel was effective because he made no unwarranted representations.

Id. In doing so, the Pennsylvania Superior Court held the following:

> To establish a claim of ineffective assistance of counsel, a defendant must demonstrate three things: that the underlying claim has arguable merit, that counsel's performance was not reasonably designed to effectuate the defendant's interests, and that counsel's performance was not reasonably designed to effectuate the defendant's interests, and that counsel's unreasonable performance prejudiced the defendant. Commonwealth v. Heggins, 2002 Pa. Super 297, ¶ 13 (filed September 1, 2002). "[T]he voluntariness of [the] plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hickman, 799 A.2d 141 (Internal quotation marks and citation omitted).
>
> At the PCRA hearing, trial counsel testified that he understood that so long as the sentence was at least the mandatory minimum sentence, the Commonwealth would not object. He testified:
>
>> I would have told him exactly what I just said now: that the Commonwealth would not go off the mandatory, but it is my understanding that the Judge, whatever the Judge would impose, if it was at least the mandatory, that the Commonwealth would not object.
>
> N.T. PCRA Hearing, 11/2/01, at 29. That statement makes no promise of a sentence, nor asserts that any agreement existed. Rather, it merely states counsel's understanding as to what would happen if Lynch pled guilty. The trial court believed this statement as reflecting counsel's actual advice to Lynch. Since the record adequately supports the PCRA Court's findings, we must accept them.[4] Therefore, the trial court's

---

[4] We do not disturb the findings of the post-conviction court unless they lack support in the record. Commonwealth v. Blackwell, 647 A.2d 915 (Pa. Super. 1994).

> determinations that counsel made unwarranted representations and therefore was not ineffective must be affirmed. We do not reach Lynch's argument that the Commonwealth breached the plea agreement. Without an agreement, there can be no breach.

Rec. Doc. 15, Ex. Q, Opinion of Pennsylvania Superior Court at ¶¶ 18-21.

On April 15, 2003, Lynch filed a petition for allowance of appeal to the Supreme Court of Pennsylvania. (Rec. Doc. 15, Ex. R, petition for allowance of appeal to the Supreme Court of Pennsylvania). He raised the sole issue of

> Whether the Superior Court erred when it affirmed the trials court's factual finding that no plea agreement existed despite guilty plea counsel's own admission that a post sentence motion he filed read "the negotiated plea in this regard called for a sentence no less than the mandatory but that the district attorney would not object to any sentence imposed by the court"?

Id. On November 14, 2003, the Supreme Court of Pennsylvania denied Lych's petition for allowance of appeal. (Rec. Doc. 15, Ex. S, Order).

On December 15, 2003, Lynch filed the instant Petition. He asserts the following grounds for relief:

> (1) Guilty plea was not knowing and voluntary because Attorney Krevsky never informed petitioner that he could be sentenced on each charge. Petitioner was told that he would receive one sentence for Homicide by Vehicle While DUI.

-12-

>    (2) Conviction was obtained by use of a coerced confession.
>
>    (3) Ineffective Assistance of counsel in violation of the Sixth Amendment. Trial counsel failed to advise Petitioner of the charges he faced, the sentencing ranges, or options with respect to pleading or proceeding to trial.
>
>    (4) Denial of right to appeal when Attorney Krevsky failed to purse any appeal despite telling Petitioner that he would.

Rec. Doc. 1.

## II. Discussion

The Antiterrorism and Effective Death Penalty Act ("AEDPA") significantly revised the standard of review for habeas claims by state prisoners when a state court has previously considered and rejected those claims. See Dickerson v. Vaughn, 90 F.3d 87, 89 (3d Cir. 1996).

>    (a)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>        (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>        (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 403 (2000). Only if the petitioner can establish that the state court's adjudication was "unreasonable," in a determination of either law or fact, is federal relief potentially available. See 28 U.S.C. § 2254(d); see also Marshall v. Hendricks, 307 F.3d 36, 51 (3d Cir. 2002).

An unreasonable determination of law is most apparent when the state court recites the incorrect federal standard in resolving constitutional claims. The decisions of the PCRA and Superior Courts in this case suffer from no such flaw.

A Petitioner, such as Lynch, "who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within' the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56-57(1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To sustain a claim for ineffective assistance of counsel under the Sixth Amendment, Lynch must show that his counsel's performance was objectively deficient and that this deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). In evaluating whether counsel's performance was deficient, "the court must defer to counsel's tactical decisions, avoid "the distorting effects of hindsight" and give counsel the benefit of a strong presumption of reasonableness. See id. at 689; Government of

-14-

the Virgin Islands v. Weatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996), cert. denied, 519 U.S. 1020 (1996).

When challenging counsel's effectiveness in the context of a guilty plea, the petitioner, in order to satisfy Strickland's prejudice requirement, "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice...that course should be followed." Strickland at 697. The PCRA and Superior Courts, without citing Strickland expressly, repeated the "reasonable probability" standard. See Werts v. Vaughn, 228 F.2d 178, 192 (3d Cir. 2000). Their decisions were not "contrary to" federal law. See Woodford v. Visciotti, 537 U.S. 19, 22-24 (2002) (stating that a state court decision that correctly recites governing legal standard is not "contrary to" federal law).

Moreover, both courts applied the Strickland rule in a reasonable manner. As required by federal precedent, the PCRA and Superior Courts engaged in a detailed analysis of whether or not a plea agreement existed, and in concluding that no agreement existed, the Courts then determined whether counsel made unwarranted

representations to Petitioner, thereby inducing him into pleading guilty. See id. at 24-27; see also Wiggins v. Smith, 539 U.S. 510 (2003) (stating that courts should weigh totality of circumstances in gauging prejudice). Both tribunals concluded that there was no plea agreement and that Petitioner's counsel was effective because he made no unwarranted representations.

Just as no error of law was committed by the state courts, no error of fact is present in their determinations. The PCRA Court conducted an evidentiary hearing at which both the former prosecutor and Lynch's trial counsel recounted their understanding of Lynch's plea. The state courts found that no plea agreement existed and that counsel acted reasonably in advising Lynch with respect to the plea entered. These findings were well supported by the evidence presented at the PCRA hearing, and cannot be deemed "unreasonable."

Lynch has failed to establish that the state court decisions were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Nor has he established that the proceedings resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. Thus, habeas relief is

unavailable under § 2254(d), and the Court will dismiss the Petition with respect to Lynch's first three issues.

Lynch's final claim is that he was denied his right to file a direct appeal, despite the fact that he informed trial counsel of his desire to file an appeal, and trial counsel's assurance that an appeal would be filed. (Rec. Doc. 1).

While such a claim is cognizable in proceedings under § 2254, see Roe v. Flores-Ortega, 528 U.S. 470 (2000), Lynch fails, however, to explain how it renders his guilty plea involuntary and unknowing. In addition, he once again fails to satisfy the prejudice requirement of Strickland.

As is evidenced from the Pennsylvania Superior Court's review of the Petitioner's PCRA petition, Lynch was permitted to challenge his conviction with no limitation placed on any issue presented. Thus, in effect, Petitioner's direct appeal was reinstated through his PCRA proceedings, and he cannot argue any prejudice suffered from the deprivation of a direct appeal. The Petition will be denied as to this claim.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. The Petition for a Writ of Habeas Corpus (doc. 1) is **DENIED**.

2. The Clerk of Court shall **CLOSE** this case.

3. There is no basis for the issuance of a certificate of appealability

                                      S/ John E. Jones III
                                      John E. Jones III
                                      United States District Judge